IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

BRANDON PATRICK LINK   )
      Plaintiff, )
         )
 vs.       )  Civil Action No. 15-819
         )  District Judge Cathy Bissoon/
TODD A. ADAMSKI, LIBERTY  )  Chief Magistrate Judge Maureen P. Kelly
TRANSPORTATION, INC., JOSEPH )
HUTH, MARC PALLA, and   )
LANDMARK LEASING, INC.,  )  Re: ECF Nos. 44 and 51
      Defendants. )

## REPORT AND RECOMMENDATION

## I. RECOMMENDATION

Plaintiff Brandon Patrick Link ("Plaintiff") brings this action against Liberty

Transportation, Inc. ("Liberty"), Landmark Leasing, Inc. ("Landmark"), Joseph Huth ("Huth"),

Marc Palla ("Palla") (collectively, "the Liberty Defendants"), and  Trooper Todd A. Adamski

("Adamski"), following Plaintiff's arrest relative to a missing truck that he had leased from

Landmark Leasing, Inc. as part of his employment with Liberty Transportation, Inc.

Presently before the Court is a Motion to Dismiss Plaintiff's Amended Complaint filed

on behalf of the Liberty Defendants and a Motion to Dismiss Amended Complaint filed by

Defendant Adamski.  ECF Nos. 44, 51.  For the following reasons, it is respectfully

recommended that both Motions be granted.

## II. REPORT

### A. FACTUAL AND PROCEDURAL BACKGROUND

According to the Amended Complaint filed in this case, Plaintiff began working as an

independent contractor with Liberty on June 29, 2012, as an "over the road truck driver."  ECF

No. 5, ¶ 15.  As part of his employment, Plaintiff was required to lease a truck through

Landmark, which is a privately held corporation owned by the same parties as Liberty.  Id.
Plaintiff alleges that he took possession of the truck in Millberry, Ohio, with the express
understanding that the truck would be housed in Charlotte, North Carolina, where Plaintiff
resides.  Id.

Plaintiff claims that on November 5, 2012, he received a telephone call from Defendants
Palla and Huth, who are both employees of Liberty, demanding that Plaintiff return the truck to
Ohio because it was needed for "a loan assignment."  Id.  See id. at ¶¶ 13, 14.  Plaintiff
apparently informed Palla and Huth that he had family commitments and was unable to
immediately leave for Ohio, at which time, according to Plaintiff, Palla and Huth threatened to
file a police report stating that the truck had been stolen and have their friend, Defendant
Adamski, issue an arrest warrant.  Id. at ¶ 15.  Plaintiff claims multiple telephone calls and texts
were subsequently exchanged during which Palla and Huth allegedly threatened Plaintiff
regarding the consequences of not immediately bringing the truck back to Ohio.  Consequently,
Plaintiff reluctantly agreed to do so.  Id.

The next day, however, having read his contract with Liberty which stated that the
company must give the lessee at least seven days' notice to return the truck, Plaintiff contacted
Palla and Huth and apparently told them that he would not be returning the truck as agreed.
Plaintiff alleges that Palla and Huth immediately started threatening and harassing Plaintiff and
his fiancé, including using racial slurs, which caused Plaintiff to lose his temper and "text
statements he now regrets."  Id.  As a result, Palla and Huth filed charges against Plaintiff for
communicating a threat.  Id.

Plaintiff contends that thereafter, on November 7, 2012, Huth contacted Plaintiff and
informed Plaintiff that his (Huth's) best friend was a police officer and that he would file

additional charges for unlawful use of the truck; Huth also allegedly told Plaintiff that he (Huth) would say that "this all occurred in Pennsylvania." Id. In fact, according to Plaintiff, Palla and Huth "falsely stated by filing a police report that the above incidents all occurred in the Commonwealth of Pennsylvania," and subsequently informed the District Attorney and Defendant Adamski that Plaintiff unlawfully took possession of the truck in Pennsylvania, which resulted in "another felony" being filed against Plaintiff. Id. Accordingly, Plaintiff was arrested in North Carolina on January 10, 2013, and subsequently extradited to Pennsylvania. Id.

Plaintiff subsequently initiated an action in this Court on July 16, 2013, which was docketed at C.A. No. 13-1021. C.A. No. 13-1021: ECF Nos. 1, 3. On April 1, 2014, Plaintiff filed a First Amended Complaint bringing claims pursuant to 42 U.S.C. § 1983 against the Pennsylvania State Police ("PSP") and Adamski for false arrest, false imprisonment, and malicious prosecution, and a claim against all Defendants for conspiracy. Plaintiff also brought a state law claim for malicious prosecution against the Liberty Defendants and a separate claim for punitive damages against the Liberty Defendants and Adamski.[1] Pursuant to a Motion to Dismiss filed by Defendants PSP and Adamski, id. at ECF No. 45, and a Motion to Dismiss submitted by the Liberty Defendants, id. at ECF No. 47, this Court issued a Report and Recommendation recommending that both Motions be granted. Id. at ECF No. 61. However, before the District Judge, the Honorable Cathy Bissoon, was able to rule on Defendants' Motions and/or the Report and Recommendation, Plaintiff filed a Motion to Voluntarily Dismiss Lawsuit Number CV 13-1021, wherein Plaintiff indicated that he would pursue charges against

---

[1] It should be noted here that Plaintiff not only acknowledged in the First Amended Complaint filed at C.A. No. 13-1021, that he leased the truck under the name of "Milton Holt," and not his own name, but he also alleged, contrary to his allegations in this case, that it was he who contacted Liberty a few months after he leased the truck to notified Liberty that he found new employment and to make arrangements to have the truck picked up in Charlotte, North Carolina. In addition, Plaintiff alleged that it was not until after Palla's agent travelled to the agreed upon location in North Carolina -- only to find that the truck was not there -- that the police report was filed. C.A. No. 13-1021: ECF No. 42, ¶¶ 14-15, 25-30.

Defendants Liberty, Palla and Huth in state court for breach of contract "and various other criminal charges." Id. at ECF No. 70. Judge Bissoon granted Plaintiff's Motion to Dismiss C.A. 13-1021 on November 17, 2014, and entered a final Judgment Order on that same date. Id, at ECF Nos. 71, 72.

On November 19, 2014, Plaintiff filed a *pro se* Complaint in the United States District Court for the Western District of North Carolina, thereby initiating the instant case. ECF No. 1. Plaintiff filed an Amended Complaint on January 23, 2015, against Liberty, Landmark, Palla, Huth, Adamski and the PSP, bringing claims for abuse of process (Count I); breach of contract (Count II); deceptive business practices (Count III); conspiracy (Count IV); and malicious prosecution (Count V). ECF No. 5. Although the claims brought against the PSP were dismissed by the District Court for the Western District of North Carolina on March 5, 2015, the remainder of the case was transferred to this Court on June 19, 2015, pursuant to a motion filed by the Liberty Defendants. ECF Nos. 6, 31, 32.

On July 1, 2015, the Liberty Defendants filed a Motion to Dismiss Plaintiff's Amended Complaint, ECF No. 45, and Plaintiff filed a Brief in Opposition to Defendants' Motion, ECF No. 55, on July 13, 2015. Defendant Adamski filed a Motion to Dismiss Amended Complaint, ECF No. 51, on July 10, 2015, to which Plaintiff filed a Brief in Opposition, ECF No. 58, on August 7, 2015. Accordingly, both the Liberty Defendants' Motion and Defendant Adamski's Motion are ripe for review.

### B.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to

the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not

accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint.  See California Pub. Employees' Ret. Sys. v. The Chubb Corp., 394 F.3d

126, 143 (3d Cir. 2004), citing Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir.

1997).  Nor must the Court accept legal conclusions set forth as factual allegations.  Bell Atlantic

Corp. v. Twombly, 550 U.S. 544, 555 (2007).  Rather, "[f]actual allegations must be enough to

raise a right to relief above the speculative level."  Id., citing Papasan v. Allain, 478 U.S. 265,

286 (1986).   Indeed, the United States Supreme Court has held that a complaint is properly

dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim

to relief that is plausible on its face," id. at 570, or where the factual content does not allow the

court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."

Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  See Phillips v. Cnty. of Allegheny, 515 F.3d 224,

231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation

of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts

suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation

that discovery will reveal evidence of the necessary element[s] of his claim").  Nevertheless, a

pro se complaint is entitled to more deference than a counselled complaint and thus the court

"should construe the complaint liberally and draw fair inferences from what is not alleged as

well as from what is alleged."  Richardson v. Folino, 2012 WL 6552916, at *4 (W.D. Pa. Dec.

14, 2012).

### C.    DISCUSSION

As previously discussed, Plaintiff has brought five Counts in the Amended Complaint:

abuse of process at Count I; breach of contract at Count II; deceptive business practices at Count

III; conspiracy at Count IV; and malicious prosecution at Count V. Although it is unclear from the Amended Complaint which Defendants Plaintiff seeks to hold liable for which claims, the Liberty Defendants have addressed all five claims and ask that the Amended Complaint be dismissed in its entirety as to them. In his Brief in Opposition to the Motion to Dismiss, Plaintiff addresses only the Liberty Defendants' arguments with respect to his claims for abuse of process and conspiracy and thus has seemingly conceded that he has failed to state a claim for breach of contract, deceptive business practices and malicious prosecution.[2] See ECF No. 55.

For his part, Defendant Adamski argues in his Motion to Dismiss that Plaintiff's claims brought against him in his official capacity should be dismissed because he is entitled to Eleventh Amendment immunity and because he is otherwise entitled to derivative absolute prosecutorial immunity and/or qualified immunity. In his Brief in Opposition to Adamski's Motion to Dismiss, Plaintiff generally denies that Adamski is entitled to immunity and specifically argues that Adamski's failure to dispute the viability of the abuse of process and conspiracy claims is fatal to his Motion. Having failed to raise the same argument with respect to Plaintiff's breach of contract, deceptive business practices and malicious prosecution claims, it appears that Plaintiff has conceded that these claims brought against Adamski are properly dismissed as well. Plaintiff appears to acknowledge as much having stated in his Brief in Opposition to Adamski's Motion to Dismiss that he "has filed a complaint against Todd Adamski for ABUSE OF PROCESS and CONSPIRACY," without mentioning the other claims brought in the Amended Complaint. ECF No. 58, ¶ 2. Thus, the only claims remaining as to any

---

[2] Indeed, this Court has already found that Plaintiff is unable to state a claim for malicious prosecution as there was ample probable cause to bring the charges at issue against Plaintiff. See C.A. No. 13-1021: ECF No. 61, pp. 8-9. See also Johnson v. Knorr, 477 F.3d 75, 81 (3d Cir. 2007) ("[t]o prove malicious prosecution under section 1983 . . . a plaintiff must show[, inter alia,] that: . . . the defendant initiated the proceeding without probable cause").

of the Defendants are Plaintiff's claims for abuse of process brought at Count I of the Amended Complaint and conspiracy brought at Count IV.

### 1.    The Liberty Defendants' Motion to Dismiss

#### a.    Abuse of process (Count I)

Although the Liberty Defendants argue that Plaintiff's abuse of process claim has been brought solely as a state law tort claim (largely because Plaintiff has not alleged that he is proceeding under Section 1983), Plaintiff has nevertheless alleged in the Amended Complaint that Defendants' alleged abuse of process violated his due process rights provided by the Fourteenth Amendment to the United States Constitution.  ECF No. 5, ¶ 21.  Thus, although Plaintiff does not specifically mention Section 1983 in his Amended Complaint, he nevertheless seeks to vindicate his constitutional rights.  Because Plaintiff does not have a cause of action directly under the Constitution, his claims are necessarily brought pursuant to Section 1983.[3] See Kaucher v. Cnty. of Bucks, 455 F.3d 418, 423 (3d Cir. 2006), *citing* Baker v. McCollan, 443 U.S. 137, 145 n.3 (1979) (footnote omitted) ("Section 1983 provides remedies for deprivations of rights established in the Constitution or federal laws.  It does not, by its own terms, create substantive rights").  See also Arpin v. Santa Clara Valley Transp. Agency, 261 F.3d 912, 925 (9th Cir. 2001) ("a litigant complaining of a violation of a constitutional right does not have a

---

[3] Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . .

42 U.S.C. § 1983.

direct cause of action under the United States Constitution but must utilize 42 U.S.C. § 1983");

Sowemimo v. Thomas, 2009 WL 3806737, at *4 (W.D. Pa. Nov. 13, 2009).

This having been said, the analysis for an abuse of process claim under Section 1983 and under state common law is the same.  See Esposito v. Little Egg Harbor Twp., 2012 WL 1495468, at *2 (D.N.J. April 27, 2012); Russoli v. Salisbury Twp., 126 F. Supp. 2d 821, 858 (E.D. Pa. 2000).  Under either theory, a claim for malicious abuse of process will be found "where prosecution is initiated legitimately and thereafter is used for a purpose other than that intended by the law."  Id., citing Williams v. Fedor, 69 F. Supp. 2d 649, 673 (M.D. Pa. 1999), aff'd, 211 F.3d 1263 (2000), and Rose v. Bartle, 871 F.2d 331, 350 (3d Cir. 1989).  "An abuse is where the party employs it for some unlawful object, not the purpose which it is intended by the law to effect; in other words, a perversion of it . . . ."  Bristow v. Clevenger, 80 F. Supp. 2d 421, 430-31 (M.D. Pa. 2000), quoting McGee v. Feege, 517 Pa. 247, 252, 535 A.2d 1020, 1023 (1987).  Thus, to establish a claim for abuse of process, the plaintiff must provide "some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process.'"  Russoli v. Salisbury Twp., 126 F. Supp. 2d at 858, quoting Williams v. Fedor, 69 F. Supp. 2d at 673.  "Examples of actions that are recoverable under the abuse of process tort are extortion by means of attachment, execution or garnishment, and blackmail by means of arrest or criminal prosecution."  Bristow v. Clevenger, 80 F. Supp. 2d at 430-31, quoting Barakat v. Del. Cnty. Mem'l Hosp., 1997 WL 381607, at *2 (E.D. Pa. July 2, 1997).  See Esposito v. Little Egg Harbor Twp., 2012 WL 1495468, at *3, quoting Ruberton v. Gabage, 280 N.J. Super. 125, 130, 654 A.2d 1002, 1005 (App. Div. 1995) ("[p]rocess is not abused unless after its issuance the defendant reveals an ulterior purpose he had in securing it by committing further acts whereby he demonstrably uses the process as a means to coerce or oppress the

plaintiff"). No liability will be found, however, where the defendant "has done nothing more than carry out the process to its authorized conclusion, even though with bad intentions." Russoli v. Salisbury Twp., 126 F. Supp. 2d at 858, *citing* Cameron v. Graphic Management Assoc., Inc., 817 F. Supp. 19, 21 (E.D. Pa. 1992), and Di Sante v. Russ Financial Co., 251 Pa. Super. 184, 189, 380 A.2d 439, 441 (1977). See McGowan v. Borough of Economy, 2008 WL 655979, at *4 (W.D. Pa. Mar. 5, 2008), *quoting* Rosen v. Am. Bank of Rolla, 426 Pa. Super. 376, 382, 627 A.2d 190, 192 (Pa. 1993) ("there is no action for abuse of process when the process is used for the purpose for which it is intended, but there is an incidental motive of spite or an ulterior purpose of benefit to the defendant").

Here, to support his claims for abuse of process Plaintiff has alleged in the Amended Complaint that:

> 15. . . . After the commencement of the initial proceedings, Defendant's Palla and Huth furthered their abuse of process by informing the District Attorney and Defendant Trooper Adamski that the Plaintiff unlawfully took possession of the vehicle in Pennsylvania, which resulted in another felony charge filed against the Plaintiff. Defendant's further stated that the vehicle was unlawfully took the truck and that the truck should never have been in Charlotte, North Carolina. Defendants informed the Plaintiff that if he signed a plea agreement and paid the Defendants $48,000.00 the Plaintiff would receive a reduced sentence.

> \* \* \*

> 19. Defendants, collectively misused and abused the legal process by knowingly, with intent and malice to file a false Police Report, when all parties were aware of the deceit and lies, solely for the purpose of using the Commonwealth of Pennsylvania Police Department as their personal collection agency.

> \* \* \*

> 22. Defendants knowingly and maliciously with intent to harm the Plaintiff filed a false police report to obtain jurisdiction over the Plaintiff.

ECF No. 5, ¶¶ 15, 19, 22. None of these assertions suffice to state a claim for abuse of process.

First, as argued by the Liberty Defendants, to the extent that Plaintiff complains that Defendant Adamski filed a false police report and/or that Palla and Huth provided false information that led to the charges being filed against Plaintiff, these allegations clearly revolve around the initiation of the legal process and not the subsequent perversion it.

Second, Plaintiff's suggestion that Palla and Huth abused the process after the commencement of the proceedings by informing the District Attorney and Defendant Adamski that Plaintiff unlawfully took the truck in Pennsylvania is equally unavailing. The fact that Plaintiff signed the lease and took possession of the truck in Pennsylvania is precisely the information that Plaintiff claims was falsely set forth in the police report and which served to initiate the proceedings. The fact that the same information was reiterated at some unidentified point thereafter does not render the statement an abuse of process or somehow serve to pervert the legal process. See Esposito v. Little Egg Harbor Twp., 2012 WL 1495468, at *3 (making false representations in the police reports, again during municipal court testimony, and again during deposition testimony were "not 'further acts' as understood in the context of an abuse of process claim").

Third, Plaintiff's assertion that "another felony" was filed against him does not suggest that the Liberty Defendants abused the legal process. The filing of charges and subsequent prosecution of a criminal action is solely within the discretion of the District Attorney and cannot be attributed to the Liberty Defendants. See Gessner v. Dep't of Corrections, 2014 WL 972290, at *6 ("[i]t is well established that decisions regarding the filing of criminal charges are the prerogative of the executive branch of government, are consigned to the sound discretion of prosecutors and under the separation of powers doctrine are not subject to judicial fiat"). See also Commonwealth v. Stipetich, 539 Pa. 428, 430, 652 A.2d 1294, 1295 (1995), *quoting*

Commonwealth v. DiPasquale, 431 Pa. 536, 540–41, 246 A.2d 430, 432 (1968) ("[a] District Attorney has a general and widely recognized power to conduct criminal litigation and prosecutions on behalf of the Commonwealth, and to decide whether and when to prosecute, and whether and when to continue or discontinue a case").

Furthermore, not only does the filing of charges connote the beginning of a legal process but even if filing additional charges can be viewed as part of, or the continuation of, an earlier process, it does not constitute a perversion of the process as the filing of charges is necessarily an integral part of the legal process even if done so with bad intentions. See Russoli v. Salisbury Twp., 126 F. Supp. 2d at 858, *quoting* Williams v. Fedor, 69 F. Supp. 2d at 673 (the plaintiff must provide "some proof of a 'definite act or threat not authorized by the process, or aimed at an objective not legitimate in the use of process'"); Freeman v. Murray, 163 F. Supp. 2d 478, 489 (M.D. Pa. 2001), *aff'd*, 37 F. App'x 49 (2002) (finding that accepted practices such as prosecutors negotiating with defendants and/or offering pleas agreements do not constitute an abuse of process). See also Russoli v. Salisbury Twp., 126 F. Supp. 2d at 858 (finding that the plaintiffs were unable to sustain their abuse of process claim where they produced no evidence that the defendants "desired or demanded anything other than the action's authorized conclusion -- criminal conviction").

Furthermore, the other felony with which Plaintiff claims he was charged -- theft of unlawful taking of movable property -- was not an additional charge but merely replaced the charge of theft by unlawful taking of immovable property with which Plaintiff had originally been charged. See ECF No. 55-1. Amending a charge is not only the function of the District Attorney but is an accepted part of the process and not a perversion of it. See Freeman v. Murray, 163 F. Supp. 2d at 489.

Finally, while it may appear at first blush that a request for $48,000.00 in exchange for a reduced sentence gives rise to an abuse of process claim, it is beyond the power of the Liberty Defendants to have abused the process in this manner. As previously discussed, the filing of charges and subsequent prosecution of a criminal action, including offering a plea bargain, is solely within the discretion of the District Attorney. See Gessner v. Dep't of Corrections, 2014 WL 972290, at *6; Commonwealth v. Stipetich, 539 Pa. at 430, 652 A.2d at 1295. Thus, even if the Liberty Defendants made the alleged request complained of, they did not -- and, indeed, could not have -- perverted the legal process or personally used the process for a purpose other than that for which it is intended.[4] Plaintiff therefore has failed to state a claim for abuse of process against the Liberty Defendants and their Motion to Dismiss in this regard is properly granted.[5]

### b. Conspiracy (Count IV)

Although Plaintiff purports to bring a claim for conspiracy at Count IV of the Amended Complaint, Count IV is devoid of any facts to support such a claim. Reading the Amended Complaint as a whole, however, it appears that Plaintiff is alleging that Defendants conspired to

---

[4] Moreover, it is not without significance that Plaintiff did not mention the alleged request for $48,000.00 in his earlier filed complaint, see C.A. No. 13-1021: ECF No. 42, or in his Brief in Opposition to the Liberty Defendants Motion to Dismiss in this case. ECF No. 55. Further, although Plaintiff presently categorizes the request as extortion in relation to his claim for malicious prosecution, the request, which was allegedly made in conjunction with the offer of a plea agreement, suggests that the $48,000.00 was the amount of restitution for the missing truck and not extortion. See ECF No. 52-1, p. 14. See also Freeman v. Murray, 163 F. Supp. 2d at 489.

[5] Plaintiff's argument in his Brief in Opposition to the Liberty Defendants' Motion to Dismiss that the process was also abused by when Adamski testified at Plaintiff's trial that Palla informed him (Adamski) that Plaintiff had signed the lease in Pennsylvania because the information was false, does not serve to resurrect Plaintiff's claim against the Liberty Defendants. Not only is it well established that a plaintiff may not amend the complaint through the brief filed in opposition to a motion to dismiss, Commonwealth of Pa. ex. rel. Zimmerman v. Pepsico, Inc., 836 F.2d 173, 181 (3d Cir. 1988), but the testimony was given by Adamski and not Palla or Huth and cannot provide the basis for finding that the Liberty Defendants abused the process. Moreover, Plaintiff appears to concede that Palla did, in fact, tell Adamski that Plaintiff signed the lease in Pennsylvania having argued in his Brief that Palla intentionally provided Adamski with the false information. See ECF No. 55, ¶ 31 ("[c]learly this was no mistake by Marc Palla, this was done intentionally . . ."). Thus, Adamski's testimony that *Palla told him* that Plaintiff signed the lease in Pennsylvania does not appear to be false and does not constitute an abuse of process.

file a false police report and to initiate criminal charges against him as evidenced by the fact that

Defendants knew that Plaintiff neither signed the lease nor took possession of the truck in

Pennsylvania. Although the theory upon which Plaintiff seeks to hold the Liberty Defendants

liable for conspiracy is unclear, he has failed to state a claim under any theory.

### (1) Section 1985 conspiracy

Under Section 1985, an action for conspiracy may be brought --

> by one injured by a conspiracy formed "for the purpose of depriving, either
> directly or indirectly, any person or class of persons of the equal protection
> of the laws, or of equal privileges and immunities under the laws." 42
> U.S.C. § 1985(3). In a line of cases beginning with *Griffin v. Breckenridge*,
> 403 U.S. 88 . . . (1971), the Supreme Court has made clear what a plaintiff
> must allege to state a claim under § 1985(3): "(1) a conspiracy; (2) for the
> purpose of depriving, either directly or indirectly, any person or class of
> persons of the equal protection of the laws, or of equal privileges and
> immunities under the laws; and (3) an act in furtherance of the conspiracy;
> (4) whereby a person is injured in his person or property or deprived of any
> right or privilege of a citizen of the United States." *United Bhd. of
> Carpenters & Joiners v. Scott*, 463 U.S. 825, 828-29 . . . (1983) (*citing
> Griffin*, 403 U.S. at 102-03 . . .).

> \*     \*     \*

> Despite its application to private conspiracies, § 1985(3) was not
> intended to provide a federal remedy for "all tortious, conspiratorial
> interferences with the rights of others," or to be a "general federal tort law."
> *Id.* at 101-02 . . . . The *Griffin* Court emphasized that because § 1985(3)
> requires the "intent to deprive of equal protection, or equal privileges and
> immunities," a claimant must allege "some racial, or perhaps otherwise
> class-based, invidiously discriminatory animus behind the conspirators'
> action" in order to state a claim. *Id.* at 102 . . . .

Farber v. City of Paterson, 440 F.3d 131, 134-35 (3d Cir. 2006). See Great Am. Fed. Sav. and

Loan Ass'n v. Novotny, 442 U.S. 366, 378 (1979) ("a plaintiff in an action under § 1985(3) must

prove both a conspiracy and a group animus"); Dayoub v. Aaron, 2013 WL 4810382, at *10

(W.D. Pa. Sept. 9, 2013); Dennison v. Pa. Dep't of Corr., 268 F. Supp. 2d 387, 402 (M.D. Pa.

2003).

Here, as argued by the Liberty Defendants, the Amended Complaint is devoid of any assertions that the alleged conspiracy was motivated by a racially based discriminatory animus designed to deprive Plaintiff of equal protection of the laws. Although Plaintiff has alleged that Defendant Palla "assaulted [him] with racial slurs" after Plaintiff refused to return the truck as he had originally agreed to do, see C.A. No. 13-1021: ECF No. 42, ¶ 29, the use of derogatory name calling is not the same as being motivated to injure Plaintiff because of his race. Moreover, even if it could be said that Palla's use of racial slurs evidenced racial animus toward Plaintiff, Plaintiff has not alleged any facts that would support a finding that the other Defendants were so motivated so as to provide the basis for a Section 1985 conspiracy.

### (2) Section 1983 and state law conspiracy

"In order to prevail on a conspiracy claim under § 1983, a plaintiff must prove that persons acting under color of state law conspired to deprive him of a federally protected right." Ridgewood Bd. of Educ. v. N.E. ex rel. M.E., 172 F.3d 238, 254 (3d Cir. 1999), *superseded by statute on other grounds as stated in* P.P. ex rel. Michael P. v. West Chester Area Sch. Dist., 585 F.3d 727, 730 (3d Cir. 2009). No cause of action for conspiracy under Section 1983 can be established, however, absent a showing of an actual violation of a federal right. As explained by the District Court for the Eastern District of Pennsylvania, a conspiracy claim "allows for imputed liability; a plaintiff may be able to impose liability on one defendant for the actions of another performed in the course of the conspiracy." Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp. 2d 803, 843 (E.D. Pa. 1998), *aff'd*, 165 F.3d 242 (3d Cir. 1999), *quoting* Dixon v. City of Lawton, 898 F.2d 1443, 1449 n.6 (10th Cir. 1990) (internal quotations omitted). "Section 1983 does not, however, punish conspiracy; an actual denial of a civil right is necessary before a cause of action arises. . . ." Id., *quoting* Andree v. Ashland Cnty., 818 F.2d 1306, 1311

(7th Cir. 1987) (internal quotations omitted).  Thus, while "[a] conspiracy may be charged under section 1983 as the legal mechanism through which to impose liability on all of the defendants without regard to who committed the particular act . . . 'a conspiracy claim is not actionable without an actual violation of section 1983.'"  Id., quoting Hale v. Townley, 45 F.3d 914, 920 (5th Cir. 1995) (citation omitted).  See In re Orthopedic Bone Screw Prod. Liab. Litig., 193 F.3d 781, 789 (3d Cir. 1999) ("[t]he established rule is that a cause of action for civil conspiracy requires a separate underlying tort as a predicate for liability.  Thus, one cannot sue a group of defendants for conspiring to engage in conduct that would not be actionable against an individual defendant.  Instead, actionable civil conspiracy must be based on an existing independent wrong or tort that would constitute a valid cause of action if committed by one actor.  Standing alone, a conspiracy does no harm and engenders no tort liability") (internal citations and quotations omitted); Halberstam v. Welch, 705 F.2d 472, 479 (D.C. Cir. 1983) ("[s]ince liability for civil conspiracy depends on performance of some underlying tortious act, the conspiracy [i.e., the agreement] is not independently actionable").

Because the Court has already found that Plaintiff has failed to state a violation of a federal right against the Liberty Defendants it follows that he cannot establish a civil conspiracy to violate those rights under Section 1983 or state law.  See Dice v. Johnson, 711 F. Supp. 2d 340, 358 n.12 (M.D. Pa. 2010) (noting that the United States Court of Appeals for the Third Circuit borrows Pennsylvania law on civil conspiracy and thus the elements of a section 1983 conspiracy are the same).  As such, Plaintiff's conspiracy claims, insofar as he seeks to bring them pursuant to Section 1983 or state law are properly dismissed.[6]

---

[6] Even if Plaintiff had stated a claim for abuse of process under Section 1983, his conspiracy claims would still fail as Plaintiff has not alleged any facts whatsoever suggesting that the Liberty Defendants entered into an agreement, plotted, or planned together.  Watson v. Sec'y Pa. Dep't of Corr., 436 F. App'x 131, 137 (3d Cir. 2011) (establishing the existence of a conspiracy requires concerted action and the existence of an agreement); Adee v. Beard, 2012 WL

## 2.    Defendant Adamski's Motion to Dismiss

As previously discussed, Defendant Adamski does not specifically argue that Plaintiff's claims for abuse of process or conspiracy should be dismissed for failure to state a claim but, rather, argues that he enjoys Eleventh Amendment immunity with respect to the claims brought against him in his official capacity and that he is otherwise entitled to derivative absolute prosecutorial immunity and/or qualified immunity.

Plaintiff has not addressed Adamski's argument regarding Plaintiff's official capacity claims and thus, rightfully so, appears to have conceded the issue.  See Will v. Michigan Dep't. of State Police, 491 U.S. 58, 70-71 (1989); Kentucky v. Graham, 473 U.S. 159, 169 (1985). Indeed, Plaintiff expressly conceded this precise issue in his suit filed earlier in this Court.  See ECF No. 13-1021: ECF No. 51, p. 12.  Accordingly, only the claims brought against Adamski in his individual capacity remain at issue.

Although it is not clear that Adamski is entitled to derivative absolute prosecutorial immunity, the Court need not address the issue as it appears that Adamski is entitled to qualified immunity.

"The qualified immunity doctrine 'protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'"  Sharp v. Johnson, 669 F.3d 144, 159, (3d Cir. 2012), *quoting* Pearson v. Callahan, 555 U.S. 223, 231 (2009).  See Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010).  Because "[q]ualified immunity protects 'all but the

---

383622, at *7 (M.D. Pa. Feb. 6, 2012) (because an agreement is the linchpin for conspiracy, a plaintiff must "allege with particularity and present material facts which show that the purported conspirators reached some understanding or agreement or plotted, planned and conspired together to deprive plaintiff of a federally protected right."  See Startzell v. City of Phila., 533 F.3d 183, 205 (3d Cir. 2008), *quoting* Adickes v. S.H. Kress & Co., 398 U.S. 144, 158 (1970) ("[t]o constitute a conspiracy, there must be a 'meeting of the minds'").

plainly incompetent or those who knowingly violate the law,' so long as an official reasonably believes that his conduct complies with the law, qualified immunity will shield that official from liability." Id., quoting Malley v. Briggs, 475 U.S. 335, 341 (1986). See Pearson v. Callahan, 555 U.S. at 244; Ray v. Twp. of Warren, 626 F.3d at 173–74.

The Supreme Court has established a two-part analysis to determine whether an official is entitled to qualified immunity: (1) whether the plaintiff has alleged facts that demonstrate a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of the alleged misconduct. Saucier v. Katz, 533 U.S. 194, 201 (2001). See Sharp v. Johnson, 669 F.3d at 159. The first question "is not a question of immunity, but whether there is any wrong to address." Ray v. Twp. of Warren, 626 F.3d at 174. Furthermore, "qualified immunity . . . is determined under a standard of objective reasonableness." Ginter v. Skahill, 298 F. App'x 161, 165 (3d Cir. 2008). Thus, "[e]ven if a constitutional right was violated, the officer is still entitled to qualified immunity if 'the officer's mistake as to what the law requires is reasonable.'" Id., quoting Saucier v. Katz, 533 U.S. at 205. See also McLaughlin v. Watson, 271 F.3d 566, 571 (3d Cir. 2001).

Here, Adamski argues that he is entitled to qualified immunity because he consulted with the District Attorney's Office prior to filing the criminal complaint against Plaintiff and that there was nevertheless ample probable cause to support the filing of the charges. Plaintiff, on the other hand, contends that Adamski's affidavit of probable cause, which provided the basis for the arrest warrant, contained statements that Adamski knew were false, namely, that the crimes allegedly committed by Plaintiff took place in Pennsylvania. Because Plaintiff has alleged in the Amended Complaint that Adamski was aware that jurisdiction in Pennsylvania was lacking,

Plaintiff claims Adamski knowingly violated a clearly established constitutional right and thus qualified immunity is unavailing.

At the outset, it should be pointed out that Plaintiff's assertions in the Amended Complaint and in his Brief in Opposition to Adamski's Motion to Dismiss that Adamski falsely stated in the police report and/or the affidavit of probable cause that Plaintiff leased and took possession of the truck in Pennsylvania and/or that Plaintiff stole the truck from 838 Croft Rd., New Alexandria, Pennsylvania, is belied by the record. See ECF No. 5, ¶ 15; ECF No. 58, ¶¶ 8, 9, 14, 16, 26, 27. Nowhere in either Adamski's police report or the affidavit of probable cause is Pennsylvania even mentioned except to state that Adamski met with Defendant Palla at his Liberty Trucking Office in Salem Township, Westmoreland County, Pennsylvania.[7] See ECF No. 52-1; C.A. No. 13-1021: ECF No. 42-3, p. 2. Further, it is clear from both the police report and the affidavit of probable cause that the basis for the charges brought against Plaintiff, particularly theft of leased property, is not that Plaintiff "stole the truck from Pennsylvania," as Plaintiff argues, but that Plaintiff left the truck on the side of the road with the keys inside and the doors unlocked. Id.[8] See 18 Pa. C.S.A § 3932.

---

[7] In deciding a motion to dismiss, "[i]n addition to the allegations contained in the pleadings, the Court may also review "matters of public record, exhibits attached to the complaint and items appearing in the record of the case," as well as "undisputedly authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." Ickes v. Flanagan, 2008 WL 859183, at *1 (W.D. Pa. Mar. 31, 2008), quoting Oshiver v. Levin, Fishbein, Sedran & Berman, 38 F.3d 1380, 1384-85 n.2 (3d Cir. 1994), and Steinhardt Group Inc. v. Citicorp, 126 F.3d 144, 145 (3d Cir. 1997). Here, Plaintiff's claims are based on both the police report and the affidavit of probable cause. Not only does Plaintiff not dispute the authenticity of the police report that Adamski has attached to his Motion to Dismiss but the affidavit of probable cause is a matter of public record as Plaintiff himself attached the affidavit of probable cause to his First Amended Complaint filed in C.A. No. 13-1021: ECF No. 42-3. The Court therefore may consider these documents without converting either Motion to Dismiss to one for summary judgment.

[8] It should be noted here that Adamski was called to take the initial report of the incident at Palla's Liberty Office in Greensburg, Pennsylvania. ECF No. 49-1, pp. 24, 37. This, coupled with Plaintiff's own assertion that Palla told Adamski that the lease was signed in, and the truck was taken from, Pennsylvania, it would appear that Adamski's mistake with respect to jurisdiction, if indeed there was a mistake, was a reasonable one and does not serve as a basis to bar qualified immunity. See Kelly v. Borough of Carlisle, 544 F. App'x 129, 134 (3d Cir. 2013) ("[q]ualified immunity gives government officials breathing room to make reasonable but mistaken judgments, and

Moreover, notwithstanding where Plaintiff leased and/or obtained the truck, there was ample probable cause to believe that Plaintiff had committed the crimes charged. Probable cause will be found where "the facts and circumstances which are within the knowledge of the officer at the time of the arrest, and of which he has reasonably trustworthy information, are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." Commonwealth v. Thompson, 604 Pa. 198, 203, 985 A.2d 928, 931 (2009). See Curcio v. Schwartz, 2013 WL 265801, at *3 (W.D. Pa. Jan. 22, 2013). In this case, it is clear from the affidavit of probable cause filed by Adamski that there was probable cause to believe that Plaintiff had committed the crimes charged. See C.A. 13-1021: ECF No. 42-3, p. 2. See also Basile v. Twp. of Smith, 752 F. Supp. 2d 643, 651 (W.D. Pa. 2010), citing Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 788 (3d Cir. 2000) ("[w]hether probable cause existed for an arrest is generally a question of fact for the jury . . . .[unless] the evidence, viewed in the light most favorable to the plaintiff, reasonably would not support a contrary finding, then the court may conclude that probable cause exists as a matter of law"). See also Pellegrino v. U.S. Transp. Sec. Admin., 855 F. Supp. 2d 343, 358 (E.D. Pa. 2012) (under Pennsylvania law, the issue of probable cause is one for the court to decide) (internal quotations and citations omitted); Jaindl v. Mohr, 432 Pa. Super. 220, 228, 637 A.2d 1353, 1357 (1994), aff'd, 541 Pa. 163, 661 A.2d 1362 (1995) ("where the evidence is undisputed or only slight differences exist in collateral mattes, the issue of probable cause is a matter for the court and not the jury"). In fact, Plaintiff does not challenge Adamski's representations in the affidavit of probable cause insofar as they establish facts and circumstances sufficient to warrant a reasonable belief that Plaintiff had committed a crime. Rather, Plaintiff complains only that the crimes he allegedly committed did not occur in

---

protects all but the plainly incompetent or those who knowingly violate the law"), *quoting* Stanton v. Sims, ___ U.S. ___, 134 S. Ct. 3, 5 (2013) (per curiam).

Pennsylvania. Thus, notwithstanding Plaintiff's assertions that jurisdiction was lacking, it does not negate the fact that Adamski had probable cause to believe that Plaintiff had committed a crime and thus did not commit a constitutional violation.[9]

More importantly, Plaintiff does not dispute Adamski's argument in his Brief or his representations in the police report that he consulted with the District Attorney's Office before filing the charges against Plaintiff and was told that Plaintiff's conduct fell within the parameters of Pennsylvania's Crime Code for theft of leased property. See ECF No. 52-1, pp. 6, 12. See also 18 Pa. C.S.A. § 3932. Moreover, it is not without significance that Plaintiff was represented by counsel at the preliminary hearing in this matter and waived the case to court without challenging the existence of probable cause or the jurisdiction of the court. See ECF No. 52-1, p. 14. Under these circumstances, it cannot be said that Adamski violated Plaintiff's constitutional rights or that his conduct was either contrary to clearly established law or objectively unreasonable. See Ginter v. Skahill, 298 F. App'x at 165 (finding that the defendant was entitled to qualified immunity where he spoke with an assistant district attorney before filing the affidavit for the plaintiff's warrant and where, from an objective standpoint, the defendant's actions

---

[9] Furthermore, as previously stated by this Court in Plaintiff's earlier suit, it is not at all clear that jurisdiction in Pennsylvania was, in fact, lacking. In addition to charges filed relative to the missing truck, Plaintiff was also charged with terroristic threats, having allegedly sent threatening text messages to Palla which Palla received in Pennsylvania. See C.A. No. 13-1021: ECF No. 42-3, p. 2; ECF No. 49-1, pp. 71-73. Indeed, following Plaintiff's trial held in the Court of Common Pleas of Westmoreland County, Judge John E. Blahovec found that, although Plaintiff was not present in Pennsylvania when the alleged threats were made and thus had no immediate ability to carry out the threats, the victim received the alleged threats in Pennsylvania, thereby supporting the argument that Pennsylvania had jurisdiction. See Basile v. Twp. of Smith, 752 F. Supp. 2d at 651, citing Barna v. City of Perth Amboy, 42 F.3d 809, 819 (3d Cir. 1994) ("as long as probable cause existed as to any single offense that could have been charged under the circumstances, an arrest is deemed to be supported by probable cause"). Judge Blahovec nevertheless dismissed the charge of terroristic threats along with the other charges only because "it [made] little sense to maintain" those charges in Pennsylvania "since the other charges occurred in Ohio." C.A. No. 13-1021: ECF No. 49-2, p. 3.

corresponded with the legal advice he received from the assistant district attorney). Adamski, therefore is entitled to qualified immunity and his Motion to Dismiss is properly granted.[10]

### D. CONCLUSION

For the foregoing reasons, it is respectfully recommended that the Motion to Dismiss Plaintiff's Amended Complaint filed on behalf of the Liberty Defendants, ECF No. 44, and the Motion to Dismiss Amended Complaint filed by Defendant Adamski, ECF No. 51, be granted.

In accordance with the Magistrate Judges Act, 28 U.S.C. § 636(b)(1), and Rule 72.C.2 of the Local Rules of Court, the parties are allowed fourteen (14) days from the date of this Order to file an appeal to the District Judge which includes the basis for objection to this Order. Any appeal is to be submitted to the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219. Failure to file a timely appeal will constitute a waiver of any appellate rights.

BY THE COURT:


/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

Dated: October 14, 2015


cc:    The Honorable Cathy Bissoon
       United States District Judge

---

[10] Even if Adamski was not entitled to qualified immunity, it appears that Plaintiff has otherwise failed to state a claim for abuse of process against Adamski. All of Plaintiff's allegations in the Amended Complaint relative to Adamski revolve around the false statements he allegedly made in the police report and to the District Attorney regarding where Plaintiff leased and obtained the truck (which precipitated the criminal charges being brought against Plaintiff) and Adamski's subsequent testimony on the matter. As already found, however, even if Adamski made the false statements complained of, they revolve around the initiation of the legal process and do not constitute a perversion of the process. See Discussion, *infra*. It therefore follows that Plaintiff is unable to state a claim for conspiracy against Adamski either. See Holt Cargo Sys., Inc. v. Del. River Port Auth., 20 F. Supp. 2d at 843.

Brandon Patrick Link
3838 Firecrest Dr.
Charlotte, NC 28217

Brandon Patrick Link
8823 Kestral Ridge Drive
Charlotte, NC 28269

All counsel of record via CM/ECF